1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

DAVID R. WEIL,

CASE NO. C15-0835JLR

11

Plaintiff,

ORDER GRANTING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

12

v.

13

CITIZENS TELECOM SERVICES
COMPANY, LLC, et al.,

14

Defendants.

15

## I.   INTRODUCTION

16

Before the court is Defendants Citizens Telecom Services Company, LLC

17

("Citizens"), and Frontier Communications Corporation's ("Frontier") (collectively,

18

"Defendants") motion for summary judgment.  (Mot. (Dkt. # 34); *see also* Reply (Dkt.

19

# 42).)  Plaintiff David R. Weil opposes Defendants' motion.  (Resp. (Dkt. # 40).)

20

Having considered the parties' submissions, the appropriate portions of the record, and

21

22

ORDER- 1

the relevant law,[1] the court GRANTS Defendants' motion for summary judgment and DISMISSES this case with prejudice.

## II. BACKGROUND

This is a case involving alleged employment discrimination "on the basis of race, color, and sex." (*See* Am. Compl. (Dkt. # 21) ¶ 1.) Mr. Weil, a male of East Indian descent, alleges that Defendants violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, and the Washington Law Against Discrimination ("WLAD"), RCW 49.60.010 *et seq.*, when Defendants failed to promote him to the position of call center director and subsequently terminated his employment. (*See generally id.*) Defendants deny those allegations and have moved for summary judgment on Mr. Weil's claims. (*See generally* Mot.)

### A.    Mr. Weil's Initial Employment

In 1999, Mr. Weil began work at an Everett call center owned by GTE. (Martell Decl. ¶ 2, Ex. 1 ("Weil Dep.") at 13:22-23.)[2] He began as a customer contact associate. (*Id.* at 13:24-14:1.) While Mr. Weil was in training, GTE merged with Bell Atlantic and

---

[1] Neither party has requested oral argument (*see* Mot. at 1; Resp. at 1), and the court finds it unnecessary for the disposition of this motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

[2] The parties have placed excerpts from several depositions in the record. (*See, e.g.*, Dkt. ## 35-1 to 35-10, 41-2, 41-4, 41-6, 41-8, 41-13, 41-14, 41-21, 41-23, 41-35.) A few of these excerpts appear in part in multiple places in the record. (*See, e.g.*, Weil Dep. (Dkt. ## 35-1, 41-8).) When first referencing the transcript of a particular deposition, the court references the declaration and paragraph affirming the authenticity and accuracy of the relevant deposition transcript. However, in subsequent citations to that deposition transcript, the court does not indicate which of the multiple locations on the docket contains that particular segment.

became Verizon.  (*Id.* at 14:8-14.)  Verizon promoted Mr. Weil to the position of team

leader, also known as a sales coach, in 2007.  (*Id.* at 14:2-10.)  Verizon promoted him

again in January 2010, this time to the position of workforce supervisor.  (*Id.* at

15:13-20.)

Later that year, Defendants acquired the Everett call center from Verizon.  (*Id.* at

16:15-21.)  In February 2011, Defendants promoted Mr. Weil to the position of customer

service manager.[3]  (*Id.* at 16:18-20.)  That promotion rendered Mr. Weil second-in-

command at the Everett call center, and he reported only to the center's director, Carlos

Zuniga.  (*Id.* at 17:7-17.)  In addition, the promotion placed considerable responsibilities

on Mr. Weil, including "oversight over almost all of the functions of the call center."  (*Id.*

at 16:24-17:3.)

**B.    Mr. Weil's 2011 and 2012 Performance Evaluations**

Carlos Zuniga completed Mr. Weil's performance evaluation for 2011.

(Venneberg Decl. (Dkt. # 40) ¶ 3, Ex. A ("Weil Performance Evals") at 10.)  In the

leadership section of the evaluation, Mr. Zuniga gave Mr. Weil ratings of 4 or 5 out of 5

with one exception—Mr. Weil received a 3 for "[i]nitiates improvements."  (*Id.* at 13.)

In summarizing Mr. Weil's performance, Mr. Zuniga described Mr. Weil as "a strong

leader in the organization" whose "key assets" included "good leadership."  (*Id.* at 14.)

_____

[3] Citizens, an affiliate of Frontier, formally employed Mr. Weil.  (Martell Decl. (Dkt.
# 35) ¶ 3, Ex. 2 ("Mailloux 30(b)(6) Dep.") at 90:16-18.)  However, "[f]or purposes of this
Motion, . . . Defendants do not dispute that both entities" should be treated as Mr. Weil's
employer.  (Mot. at 1 n.1; *see also* Resp. at 3 n.2.)  Based on Defendants' concession, the court
concludes that any distinction between Citizens and Frontier is immaterial to the resolution of
Defendants' motion and treats Defendants as interchangeable in this order.

The 2011 evaluation also identified several targets for improvement, including "[e]stablishing a stronger communication channel with other center managers and directors," "[a]ssuming leadership roles beyond Everett - [i]dentify[ing] opportunities and push[ing] to lead them," and "[m]anag[ing] top performers and bottom performers more effectively (cannot be slowed down by poor performance)." (*Id.*)  For 2011, Mr. Weil received leadership rating of 4.06 out of 5 and an overall performance rating of 4.19 out of 5. (*Id.*)

Mr. Weil received a worse performance evaluation in 2012, especially pertaining to the leadership subcategories. (*Id.* at 2-9.)  With one exception, Lynn Holmgren, who completed the 2012 performance evaluation, gave Mr. Weil ratings of 3 and 4 out of 5 in the subcategories pertaining to leadership. (*Id.* at 7-8.)  The exception is the category for "[c]ommunicates proactively," for which Mr. Weil received a rating of 2 out of 5. (*Id.* at 7.)  Mr. Weil's self-evaluation in the leadership categories declined as well—from a 4.92 in 2011 (*id.* at 14) to a 4.2 in 2012 (*id.* at 8).  The evaluation identified Mr. Weil's "strong analytical qualities," which drove "improved performance from [Mr. Weil's] team." (*Id.*)  Like Mr. Weil's 2011 performance evaluation, the 2012 evaluation recommended several areas for improvement. (*Id.*)  For instance, the 2012 evaluation recommended that Mr. Weil "[c]ontinu[e] to use tactful and appropriate responses when faced with confrontation/comparisons to other centers," "simplify[] the complexities of the business and driv[e] results through your people," "[c]ontinu[e] to drive the sales mentality and more excitement within the Everett Center," and use "data to understand gaps within [his] control and driv[e] performance within the center." (*Id.*)

**C.      Defendants Replace the Everett Call Center Director**

In September 2012, Defendants promoted Mr. Zuniga, opening up the director position at the Everett call center.  (Mailloux 30(b)(6) Dep. at 10:8-15.)  In late August, Defendants posted the position on their career site and invited applications.  (*Id.* at 10:23-11:8.)  During the interviewing period, Mr. Weil served as acting director of the Everett call center.  (*Id.* at 16:16-19.)  Mr. Weil applied for the permanent director position, and Defendants interviewed him and several other candidates in early October 2012.  (*Id.* at 16:1-8.)

Initially, Ms. Holmgren had the responsibility for hiring a director to replace Mr. Zuniga.  (*Id.* at 15:8-10.)  On January 14, 2013, however, Becky Potts took over as Mr. Weil's supervisor and assumed that responsibility.  (*Id.* at 44:22-45:1; Martell Decl. ¶ 5, Ex. 4 ("Potts 30(b)(6) Dep.") at 6:21-7:9.)  At that time, Defendants moved Ms. Holmgren to a "specialized role where she had no one" reporting to her.  (Weil Dep. at 201:24-25.)

In late March 2013, Ms. Potts opted to promote Jennifer Brown to the director position.  (Mailloux 30(b)(6) Dep. at 14:20-22, 20:2-15.)  Ms. Brown had not previously managed call centers, but she had served as the "lead individual" because her prior centers lacked a director.  (*Id.* at 32:24-33:3.)  She had "15-plus years of experience in the call centers," "handled more than one call center for a period of time," and could "inspire," "motivate people," "address performance issues," and follow through on her promises.  (*Id.* at 33:4-13.)  On the other hand, Ms. Potts determined that Mr. Weil had

1  lacked a proactive approach and sufficient leadership skills to warrant the promotion.

2  (*See* Potts 30(b)(6) Dep. at 57:1-63:1.)

3  **D.   Mr. Weil's Performance Deteriorates**

4          Upon becoming director of the Everett call center, Ms. Brown worked with Ms.

5  Potts and Mr. Weil to draft and implement a developmental action plan ("DAP") for Mr.

6  Weil.  (Weil Dep. at 103:4-25.)  Ms. Brown testified that the DAP was intended to

7  develop Mr. Weil's leadership skills so that he could step in "when [Ms. Brown] was

8  ready to move on to something else."  (Martell Decl. ¶ 7, Ex. 6 ("Brown 30(b)(6) Dep.")

9  at 99:1-17.)  On May 13, 2013, Ms. Brown emailed Mr. Weil the final version of his

10  DAP.  (Venneberg Decl. ¶ 16, Ex. N ("Weil DAP") at 1-3.)

11          From the outset, Mr. Weil failed to meet the expectations in his DAP.  For

12  instance, Mr. Weil routinely failed to send daily updates to Ms. Brown, which he had

13  agreed to do.  (*Id.* at 3; Brown 30(b)(6) Dep. at 29:17-18.)  He also failed to hold the two

14  focus group sessions per month prescribed by his DAP.  (Weil DAP at 3; Brown 30(b)(6)

15  Dep. at 30:4-9.)  He did not send out "bi monthly email[s] to address [the] state of [the]

16  center."  (Weil DAP at 3; *see* Brown 30(b)(6) Dep. at 31:8-14.)  In sum, beginning at

17  least as early as May 2013, Mr. Weil displayed a pattern of non-responsiveness and failed

18  to comply with his DAP and other promises.

19          On June 28, 2016, Defendants placed Mr. Weil on a 60-day performance

20  improvement plan ("PIP") because he had not been meeting the "basic expectations of his

21  //

22  //

ORDER- 6

job."[4]  (Brown 30(b)(6) Dep. at 78:17-24; *see* Venneberg Decl. ¶ 23, Ex. U ("Weil PIP") at 1-3.)  For the most part, the action items on the PIP mirror those on Mr. Weil's DAP. (*Compare* Weil DAP at 2-3 *with* Weil PIP at 2-3; *see also* Weil Dep. at 140:1-14.)  The PIP indicated that the indentified areas of underperformance "require[d] immediate and sustainable improvement" and warned that "failure to meet performance standards on a sustained basis w[ould] result in disciplinary action, up to and including termination of employment."  (Weil PIP at 3.)

Shortly after receiving his PIP, Mr. Weil performed a self-evaluation for the first half of 2013.  (Martell Decl. ¶ 20, Ex. 19 ("2013 Midyear Self-Eval."); Weil Dep. at 77:9-15.)  In all applicable areas, Mr. Weil rated himself either a 2 out of 5, which Mr. Weil took to indicate "[n]ot consistently meeting expectations," or a 3 out of 5, which Mr. Weil took to indicate "[m]eeting . . . expectations."  (Weil Dep. at 77:20-78:1.)

After receiving his PIP, Mr. Weil continued to fail to follow through on his action items.  (Martell Decl. ¶ 22, Ex. 21 at 2-5; *see* Brown 30(b)(6) Dep. at 175:2-178:20.)  On August 1, 2013, Ms. Brown met with Mr. Weil to discuss those shortcomings and Mr.

---

[4] Mr. Weil points out that Defendants initially prepared a PIP template for Mr. Weil on May 17, 2016, only a few days after finalizing Mr. Weil's DAP.  (Resp. at 6-7.)  Defendants concede that this is true but argue that this was a result of placing the DAP information into the wrong template.  (*See* Mot. at 9 n.17; Brown 30(b)(6) Dep. at 103:5-13.)  Regardless, Defendants did not finalize the PIP and provide it to Mr. Weil until June 28, 2016.  (Weil PIP at 1.) Defendants have submitted substantial evidence that as of June 28, Mr. Weil had fallen short of several major goals articulated in his DAP, and Mr. Weil either admits or cannot recall details on those shortcomings.  (Weil Dep. at 140:15-145:5.)  Accordingly, the court concludes that Mr. Weil's performance warranted his PIP and that it is therefore immaterial why Defendants placed Mr. Weil's DAP in a PIP template as early as May 17, 2016.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

ORDER- 7

1    Weil's "overall progress." (Martell Decl. Ex. 21 at 1.)  At the meeting, Mr. Weil

2    expressed that he did not believe in PIPs, and Ms. Brown came away with the impression

3    that Mr. Weil lacked "personal accountability" and the ability to discipline the employees

4    he supervised. (Brown 30(b)(6) Dep. at 38:3-16.)

5    **E.      Defendants Terminate Mr. Weil**

6             Based on Mr. Weil's performance since April 2013, Ms. Brown made the decision

7    in the first week of August 2013 to terminate Mr. Weil. (*Id.* at 19:3-18.)  Pursuant to

8    Defendants' typical practice, Ms. Brown submitted a termination request to Mr. Mailloux

9    so that he could review whether termination was warranted. (Martell Decl. ¶ 4, Ex. 3

10   ("Mailloux Dep.") at 61:1-62:3.)  After a delay of several days in hearing back from Mr.

11   Mailloux, Donna Loffert, a vice president of residential contact centers with

12   responsibility for the Everett call center (Potts 30(b)(6) Dep. at 8:11-9:14), emailed Mr.

13   Mailloux in support of Ms. Brown and urged Mr. Mailloux to approve Mr. Weil's firing

14   "soon" (Venneburg Decl. ¶ 14, Ex. L ("Loffert Dep.") at 100:4-10; *see also id.* at

15   100:11-12 ("When the business decides to terminate someone, it's usually within an

16   hour."), 100:24-101:1 ("I thought, he wasn't performing; it's time for him not to be

17   there.")).  Mr. Mailloux approved Mr. Brown's termination request and forwarded it to

18   in-house counsel for final approval. (Mailloux Dep. at 62:21-63:1.)

19            On August 15, 2016, Defendants informed Mr. Weil that they were terminating his

20   employment, effective August 16, 2016, for inability to overcome performance gaps.

21   (Weil Dep. at 173:3-174:1.)  Defendants have specified that a lack of "confidence in [Mr.

22

Weil]'s level of honesty" and lack of dependability contributed to their decision to

terminate Mr. Weil.  (Mailloux Dep. at 55:14-25.)

**F.     Mr. Weil Files Suit**

        On or about October 22, 2013, Mr. Weil filed a charge of discrimination "based on

race, sex and retaliation" with the United States Equal Employment Opportunity

Commission ("EEOC").  (Am. Compl. ¶ 3.)  On or about April 28, 2015, the EEOC

issued a right to sue letter to Mr. Weil.  (*Id.*)  Mr. Weil filed this lawsuit on May 29,

2015.  (Compl. (Dkt. # 1).)  Defendants have now moved for summary judgment.  (Mot.)

**III.     ANALYSIS**

**A.     Legal Standard**

        Summary judgment is appropriate if the evidence, when viewed in the light most

favorable to the non-moving party, demonstrates "that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cty. of

L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).  The moving party bears the initial burden of

showing that there is no genuine dispute of material fact and can do so simply by

showing that there is no evidence to support the non-moving party's claims.  *Celotex*, 477

U.S. at 323, 325.  If the moving party meets his or her burden, then the non-moving party

"must make a showing sufficient to establish a genuine dispute of material fact regarding

the existence of the essential elements of his case that he must prove at trial" in order to

withstand summary judgment.  *Galen*, 477 F.3d at 658.  The non-moving party may do

1  this by use of affidavits (or declarations), including his or her own, depositions, answers

2  to interrogatories or requests for admissions.  *Anderson*, 477 U.S. at 248.

3        The court may only consider admissible evidence when ruling on a motion for

4  summary judgment.  *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773-75 (9th Cir. 2002).

5  "Legal memoranda and oral argument are not evidence and do not create issues of fact

6  capable of defeating an otherwise valid summary judgment." *Estrella v. Brandt*, 682

7  F.2d 814, 819-20 (9th Cir. 1982); *see also Rivera v. Nat'l R.R. Passenger Corp.*, 331 F.3d

8  1074, 1078 (9th Cir. 2003) ("Conclusory allegations unsupported by factual data cannot

9  defeat summary judgment.").

10       The court is "required to view the facts and draw reasonable inferences in the light

11 most favorable to the [non-moving] party." *Scott v. Harris*, 550 U.S. 372, 378 (2007).

12 Only disputes over the facts that might affect the outcome of the suit under the governing

13 law are "material" and will properly preclude the entry of summary judgment. *Anderson*,

14 477 U.S. at 248.  The nonmoving party "must do more than simply show that there is

15 some metaphysical doubt as to the material facts . . . . Where the record taken as a whole

16 could not lead a rational trier of fact to find for the nonmoving party, there is no genuine

17 issue for trial." *Scott*, 550 U.S. at 380 (internal quotation marks omitted) (quoting

18 *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).  As

19 framed by the Supreme Court, the ultimate question on a summary judgment motion is

20 whether the evidence "presents a sufficient disagreement to require submission to a jury

21 or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*,

22 477 U.S. at 251-52.

**B.      Defendants' Motion for Summary Judgment**

  The court determines a threshold evidentiary dispute before turning to the merits

of Defendants' motion for summary judgment.

  1.   <u>Admissibility of Mr. Weil's Testimony Regarding Ms. Holmgren's Statement</u>

  The court may only consider admissible evidence when ruling on a motion for

summary judgment.  *Orr*, 285 F.3d at 773-75.  The parties dispute whether the court may

consider the following statement, which Mr. Weil made at his deposition:

> Q:      At Frontier did anyone ever make any inappropriate comments to
> you regarding your gender?
> A:      I'm not sure if it's inappropriate or not.  There was a comment made
> by a former supervisor regarding race and gender, but I don't think it was
> inappropriate.  It was more in the context of explanation and it wasn't like
> she was saying it to me.
> Q:      Was this --
> A:      But it wasn't -- I don't think that it was inappropriate -- like an
> attack on me.
> Q:      Was this Ms. Holmgren?
> A:      Yes, there was -- it was her.  And I did have -- yes, it was her.
> Q:      And what did she say to you?
> A:      She had made it a -- that the statement saying that she felt I was
> qualified for the job.  She tried to get me into the director role; had three
> things that were against me, and her exact verbiage -- I remember this
> clearly -- is, "You have three things going against you.  You're a former
> Verizon employee, okay.  You're not white.  And you're not female."
> Q:      When do you claim Ms. Holmgren made this statement?
> A:      It was April.  I don't remember the exact day in April.
> Q:      In April of 2013?
> A:      Yes.
> Q:      And Ms. Holmgren had left the company by this time; is that right?
> A:      No.
> Q:      She had not been involved in the -- in the decision, though, right?
> A:      She was involved in the hiring process up until January.  After that
> she was not involved in the process.
> Q:      Because she had moved to a different role, correct?
> A:      Yes.

1  (Weil Dep. at 194:3-195:10; *see* Mot. at 18-19; Resp. at 13-15; Reply at 3-4.)  Mr. Weil

2  argues that this testimony alone constitutes sufficient direct evidence to preclude

3  summary judgment on his failure to promote claim.  (Resp. at 13.)  In particular, Mr.

4  Weil points to his testimony that Ms. Holmgren stated that Mr. Weil's former employer,

5  skin color, and gender "were against him."[5]  (Weil Dep. at 194:18.)

6        Mr. Weil clearly offers Ms. Holmgren's purported statement for the truth of the

7  matter asserted in that statement, and Ms. Holmgren has not testified to making the

8  statement.  *See* Fed. R. Evid. 801(a)-(c) (defining hearsay).  However, Mr. Weil argues

9  that Ms. Holmgren's statement is not hearsay because it satisfies the carveout for

10  admissions by party opponents.  (Resp. at 14 (citing Fed. R. Evid. 801(d)(2)(D)).)

11  Federal Rule of Evidence 801(d)(2)(D) provides that a statement is not hearsay if it is

12  "offered against an opposing party" and "made by the party's agent or employee on a

13  matter within the scope of that relationship and while it existed."  Fed. R. Evid.

14  801(d)(2)(D).  This rule "requires the proffering party to lay a foundation to show that an

15  otherwise excludible statement relates to a matter within the scope of the agent's

16  employment."  *Breneman v. Kennecott Corp.*, 799 F.2d 470, 473 (9th Cir. 1986); *see also*

17  *In re Sunset Bay Assocs.*, 944 F.2d 1503, 1519 (9th Cir. 1991) ("Significantly, the

18  statements need only *concern* matters within the scope of the agency; they need not be

19  made within the scope of the agency." (emphasis in original)).

20

21      [5] Granting all reasonable inferences in favor of Mr. Weil, a factfinder could read Ms.
Holmgren's statement to indicate that Mr. Weil's skin color and gender played a role in the
22  decision not to hire him.  Accordingly, the statement's admissibility is relevant to the court's
consideration of Defendants' motion for summary judgment.

1    Mr. Weil indicates that Ms. Holmgren made the disputed statement in April of

2   2013.  (Weil Dep. at 194:22-195:1.)  Ms. Holmgren was only involved in the hiring

3   process for the director position until January 2013, at which point Ms. Holmgren

4   transitioned to a different position without responsibility for hiring.  (*Id.* at 195:5-10,

5   203:2-7.)  As Mr. Weil acknowledges, Ms. Holmgren did not partake in that final

6   decision.  (*Id.* at 195:5-10.)  However, although "[b]eing a direct decision-maker . . .

7   constitutes strong proof that a statement was made within the scope of employment," the

8   "'scope of employment' criterion extends beyond direct decision-makers."  *Carter v.*

9   *Univ. of Toledo*, 349 F.3d 269, 275 (6th Cir. 2003).  Furthermore, "[t]he agent is not

10   required to have authority to make a statement on a particular subject."  *See Nekolny v.*

11   *Painter*, 653 F.2d 1164, 1171 (7th Cir. 1981).  Accordingly, Ms. Holmgren's lack of

12   decision-making authority at the time she made the statement is not dispositive on

13   whether the statement relates to a matter within the scope of her employment.

14    However, the burden remains on Mr. Weil to "lay a foundation to show that" Ms.

15   Holmgren's statement "relates to a matter within the scope of [her] employment."

16   *Breneman*, 799 F.2d at 473.  Mr. Weil argues only that Ms. Holmgren "was still

17   employed by Frontier when she made this statement to Weil."  (Resp. at 15; *see also*

18   Mailloux Decl. (Dkt. # 36) ¶ 3 ("Frontier terminated Ms. Holmgren's employment on

19   June 1, 2013.").)  This statement and the evidence cited in support thereof lay no

20   foundation regarding the scope of Ms. Holmgren's employment when she made the

21   statement in question.  *See Breneman*, 799 F.2d at 473; *Pfingston v. Ronan Eng'g Co.*,

22   284 F.3d 999, 1004 (9th Cir. 2002) (declining to conclude whether a declarant's

1  statement constituted a statement of a party opponent because the party seeking

2  admission did "not provide any description of [the declarant]'s job responsibilities" and

3  failed to show that those "job duties had anything to do with" the statement at issue).

4  Indeed, based on the evidence in the record, the court can reasonably infer only that the

5  scope of Ms. Holmgren's employment in April 2013 was minimal.  (*See, e.g.*, Weil Dep.

6  at 195:5-10 (confirming that Ms. Holmgren was "involved in the hiring process up until

7  January" 2013 and that "[a]fter that she was not involved in the process"), 201:22-25

8  ("It's like [Ms. Holmgren] went from someone that had thousands of people reporting to

9  her.  So all of a sudden being moved into a specialized role where she had no one.").)

10 Mr. Weil has therefore failed to satisfy his burden of demonstrating that Ms. Holmgren

11 made the statement within the scope of her employment.  *Breneman*, 799 F.2d at 473.

12      Based on the foregoing analysis, the court concludes that Ms. Holmgren's April

13 2013 statement is inadmissible hearsay.  *See* Fed. R. Evid. 801.  Accordingly, the court

14 excludes that evidence and does not consider it for its truth in evaluating Defendants'

15 motion for summary judgment.  *Orr*, 285 F.3d at 773-75.

16      2.  *McDonnell Douglas* Framework

17      Courts evaluate discrimination claims under Title VII, Section 1981, and the

18 WLAD using the *McDonnell Douglas* framework.  *See Cornwell v. Electra Cent. Credit*

19 *Union*, 439 F.3d 1018, 1028 (9th Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*,

20 411 U.S. 792, 801 (1973)); *Manatt v. Bank of Am., NA*, 339 F.3d 792, 797 (9th Cir.

21 2003); *see also Kastanis v. Educ. Emp. Credit Union*, 859 P.2d 26, 30 (Wash. 1993)

22 ("This court has adopted the standard articulated by *McDonnell Douglas* in

1    discrimination cases that arise out of RCW 49.60.180 [the WLAD] and the common

2    law.").  That framework first requires the plaintiff to make out a prima facie case.  The

3    plaintiff can satisfy the prima facie burden either by providing direct evidence of

4    discriminatory intent or by showing (1) that he or she was a member of a protected class,

5    (2) that he or she was qualified for and performing adequately in the position in question,

6    (3) that he or she suffered an adverse employment action, and (4) either (a) that similarly

7    situated employees outside the protected class were treated more favorably, or (b) that

8    other circumstances surrounding the adverse action give rise to an inference of

9    discrimination.  *See Cornwell*, 439 F.3d at 1028; *Peterson v. Hewlett-Packard Co.*, 358

10   F.3d 599, 603 (9th Cir. 2004).

11          "If the plaintiff establishes a prima facie case, the burden of production—but not

12   persuasion—then shifts to the employer to articulate some legitimate, nondiscriminatory

13   reason for the challenged action."  *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054,

14   1062 (9th Cir. 2002) (citing *McDonnell Douglas*, 411 U.S. at 802).  If the employer

15   satisfies this burden of production, the burden shifts back to the plaintiff to show "that the

16   articulated reason is pretextual 'either directly by persuading the court that a

17   discriminatory reason more likely motivated the employer or indirectly by showing that

18   the employer's proffered explanation is unworthy of credence.'"  *Id.* (quoting *Chuang v.

19   Univ. of Cal. Davis*, 225 F.3d 1115, 1123 (9th Cir. 2000)).  "Circumstantial evidence of

20   pretext must be specific and substantial in order to survive summary judgment."  *Bergene

21   v. Salt River Project Agric. Improvement and Power Dist.*, 272 F.3d 1136, 1142 (9th Cir.

22   2001).

1          3.  Mr. Weil's Failure-to-Promote Claim

2          Mr. Weil contends that he satisfies the *McDonnell Douglas* burden-shifting

3   framework on his failure to promote claim.  Defendants indicate that they did not

4   promote Mr. Weil because he lacked the leadership skills desired in the director position.

5   (Mot. at 16.)  Mr. Weil does not contest whether this reason, if true, is legitimate and

6   nondiscriminatory.  (Resp. at 16); *see Villiarimo*, 281 F.3d at 1062.  Instead, he argues

7   that there is "specific and substantial evidence that the reason given for failing to promote

8   [Mr.] Weil was a pretext for discrimination."  (Resp. at 16.)  The court disagrees and

9   concludes that Mr. Weil has failed to demonstrate pretext on his claim for failure to

10  promote.[6]

11         Mr. Weil first points to his prior performance evaluations as evidence of pretext.

12  (*Id.* at 16-17.)  He contends that several positive comments on his 2011 and 2012

13  evaluations demonstrate that Defendants' proffered explanation for their failure to

14  promote Mr. Weil is "unworthy of credence."  (Resp. at 17.)  Mr. Weil indeed received

15  comments on his "strong" and "good" leadership in 2011.  (Weil Performance Evals at

16  14.)  His 2012 evaluation commended Mr. Weil's "performance drive" and encouraged

17  him to "continue that performance leadership."  (*Id.* at 8.)  However, Mr. Weil's self-

18  ratings demonstrate a decline from 2011 to 2012 in the categories that Defendants

19
      _____

20        [6] Because the court concludes that Mr. Weil has failed to demonstrate pretext, it assumes
     without deciding that Mr. Weil satisfied his prima facie burden.  However, the court notes that
     Mr. Weil's only argument that Ms. Brown was not "similarly situated," *Cornwell*, 439 F.3d at
21   1028, is the conclusory assertion that "[t]here is certainly no basis for arguing that [Ms.] Brown
     was not a 'similarly situated individual' to [Mr.] Weil in the application process for the Director
     position" (Resp. at 16).  This argument appears without citation and is not a reasonable inference
22   based on the evidence in the record.

1   associate with leadership.  (*Compare id.* at 13-14 (averaging 4.92 in Mr. Weil's 2011

2   self-ratings pertaining to leadership competency) *with id.* at 7-8 (averaging 4.2 in Mr.

3   Weil's 2012 self-ratings pertaining to leadership competency).)  Furthermore, the

4   majority of the specific comments in Mr. Weil's 2012 evaluation are constructive, issuing

5   suggestions to Mr. Weil to improve his leadership-related skills rather than commending

6   his past performance.  (*Id.* at 8.)  Thus, in the context of Mr. Weil's full performance

7   evaluations for 2011 and 2012, the excerpts that Mr. Weil highlights do not support the

8   inference that Mr. Weil has pointed to "specific and substantial" evidence of pretext.

9   *Bergene*, 272 F.3d at 1142.

10          Mr. Weil next argues that the court should skeptically view Defendants' proffered

11  explanation that Mr. Weil lacked leadership skills because the explanation is highly

12  subjective.  (Resp. at 17 (citing *Nanty v. Barrows Co.*, 660 F.2d 1327, 1334 (9th Cir.

13  1981), *overruled on other ground by O'Day v. McDonnell Douglas Helicopter Co.*, 79

14  F.3d 756 (9th Cir. 1996)).)  "Subjective job criteria present potential for serious abuse

15  and should be viewed with much skepticism.  Use of subjective job criteria . . . provides a

16  convenient pretext for discriminatory practices."  *Nanty*, 660 F.2d at 1334.  Mr. Weil

17  cites several Ninth Circuit cases in support of his argument.  (Resp. at 17.)  However,

18  unlike in those cases, the other evidence of pretext that Mr. Weil identifies is *de minimis*.

19  *Cf. Bergene v. Salt River Project Agric. Improvement & Power Dist.*, 272 F.3d 1136,

20  1142 (9th Cir. 2001) (concluding "[a]gainst the background of the other evidence of

21  pretext"—including other direct and circumstantial evidence—that "the subjective nature

22  of [the defendant's] criteria provides further circumstantial evidence" of an improper

ORDER- 17

1   motive); *Jauregui v. City of Glendale*, 852 F.2d 1128, 1135 (9th Cir. 1988) (affirming the

2   district court's finding of disparate treatment based on the "manipulation inherent in the

3   use of subjective evaluations" and "the facts of th[e] case," including an all-white-male

4   supervisory group at the defendant police department, the police department contravening

5   its own prior practices in his promotion, and an "atmosphere unconducive to inter-ethnic

6   appreciation and respect").  Moreover, Mr. Weil's negative self-assessments contradict

7   his argument that Defendants' indictment of his leadership skills should be viewed

8   skeptically and corroborate Defendants' proffered explanation.  (*See* Weil Performance

9   Evals at 7-8, 13-14.)  Accordingly, Mr. Weil's argument regarding subjective criteria

10  does not raise a genuine dispute of material fact that bears on pretext.

11       Finally, Mr. Weil argues that there is evidence that Defendants did not actually

12  consider Mr. Weil's leadership abilities in determining not to promote Mr. Weil.  (Resp.

13  at 17-18.)  Ms. Potts, acting as Defendants' Rule 30(b)(6) designee, testified that "the

14  three main reasons" for deciding not to promote Mr. Weil to the director position were

15  his failures to "communicate proactively," demonstrate "ownership and accountability,"

16  and "collaborate cross functionally."  (Potts 30(b)(6) Dep. at 31:17-32:4; *see also id.* at

17  32:5-7 (confirming that there were no other reasons for declining to promote Mr. Weil);

18  Martell Decl. ¶ 14, Ex. 14 (listing and elaborating on the same reasons for recommending

19  against promoting Mr. Weil).)  Mr. Weil accurately points out that none of these three

20  reasons contains "a reference to 'leadership' or deficiencies in 'leadership.'"  (Resp. at

21  18.)  However, all three reasons comprise subcategories in the "[l]eadership

22  [a]ssessment" category of Defendants' performance evaluation.  (*See, e.g.*, Weil

1   Performance Evals at 7-8.)  Accordingly, the court finds no inconsistency between the

2   reasons Ms. Potts gave in prior emails and her deposition and Defendants' proffered

3   reason in this motion, and therefore no reason to infer that the proffered reason is pretext.

4          Based on the foregoing analysis, the court concludes that the evidence in the

5   record, viewed in the light most favorable to Mr. Weil, fails to raise a genuine dispute of

6   material fact that could reasonably support the inference that "specific and substantial"

7   evidence of pretext exists.  *Bergene*, 272 F.3d at 1142.  Accordingly, the court grants

8   summary judgment to Defendants on Mr. Weil's claim for failure to promote.

9          4.  Mr. Weil's Wrongful Termination Claim

10          Mr. Weil also contends that he satisfies the *McDonnell Douglas* burden-shifting

11  framework on his failure to promote claim.  Defendants do not dispute that Mr. Weil is a

12  member of a protected class and that his termination constitutes an adverse employment

13  action.  (*See* Mot. at 20-21); *Cornwell*, 439 F.3d at 1028.  However, Defendants contend

14  that Mr. Weil fails to satisfy the other two elements of his prima facie case.  The court

15  agrees and accordingly concludes that Defendants are entitled to summary judgment on

16  the wrongful termination claim.

17          The undisputed evidence demonstrates that Mr. Weil was not performing

18  satisfactory work, and he therefore fails the second element of his prima facie case.  In

19  June 2013, Mr. Weil completed his midyear self-evaluation for the first half of 2013.

20  (Weil Dep. at 92:4-8.)  Mr. Weil gave himself an average score of 2.6 out of 5, which

21  was below the acceptable range and 0.8 below the 3.4 self-rating he gave himself in

22

1   2012.[7]  (2013 Midyear Self-Eval.; Weil Dep. at 77:20-78:1 (confirming that a rating of

2   below three on a performance review would reflect that a person was "[n]ot consistently

3   satisfactory").)

4          In support of this element, Mr. Weil rehashes the argument he made regarding

5   promotion—he selects several positive excerpts from his 2011 and 2012 performance

6   reviews.  (Resp. at 18-19.)  This argument ignores the downward trend in Mr. Weil's

7   performance, which his self-evaluations corroborate.  (*See* Weil Performance Evals; 2013

8   Midyear Self-Eval.)  Moreover, Mr. Weil ignores that Ms. Brown decided to terminate

9   Mr. Weil based on his performance since April 2013.  (Brown 30(b)(6) Dep. at

10  91:12-92:6.)  Beginning in May 2013, Mr. Weil repeatedly missed the deadlines and

11  ignored the pledges he made in his DAP.  (Weil DAP at 3; Brown 30(b)(6) Dep. at

12  29:17-18, 30:3-9, 31:8-14.)  Defendants then placed Mr. Weil on a PIP, and only when

13  Mr. Weil failed to meet the expectations in the PIP did Defendants terminate Mr. Weil.

14  (*See* Martell Decl. Ex. 21 at 2-5 (detailing the ways in which Mr. Weil failed to meet his

15  PIP); Weil Dep. at 155:2-157:25, 159:23-164:6 (indicating a lack of memory or no reason

16  to dispute Ms. Brown's assessment of the ways in which Mr. Weil failed to meet his

17  PIP).)  Based on this undisputed evidence, a reasonable factfinder could not conclude that

18  Mr. Weil "was performing his job well enough to rule out the possibility that he was fired

19  _____

20          [7] Mr. Weil argues that the 2.6 rating is skewed because "the full assessment would
    include the profit section which would increase th[e] results."  (Weil Dep. at 92:19-20.)
21  However, he subsequently indicated that he did not know whether the profit numbers would have
    increased his rating or not.  (*Id.* at 93:4-6.)  Regardless of the impact the profit section would
22  have on Mr. Weil's rating, Mr. Weil gave himself unsatisfactory ratings on three of eight
    applicable leadership subcategories.  (*See* 2013 Midyear Self-Eval.)

1    for inadequate job performance," *Pejic v. Hughes Helicopters, Inc.*, 840 F.2d 667, 672

2    (9th Cir. 1988), and Mr. Weil has thus failed to raise a genuine dispute of material fact

3    regarding the second element of his prima facie case.

4          Mr. Weil also fails to raise a genuine dispute of material fact regarding the fourth

5    element, which requires that similarly situated employees outside his class were treated

6    more favorably or that other circumstances give rise to an inference of discrimination.

7    *Peterson*, 358 F.3d at 603.  The only argument that Mr. Weil makes toward this element

8    is that "it is undisputed that no white female Directors or Managers of Frontier

9    Residential Contact Centers were subjected to discipline or involuntary termination

10   during the period when Potts had supervisory authority over those employees." (Resp. at

11   19.)

12         "[I]ndividuals are similarly situated when they have similar jobs and display

13   similar conduct." *Vasquez v. Cty. of L.A.*, 349 F.3d 634, 641 (9th Cir. 2003).  "In order to

14   show that the 'employees' allegedly receiving more favorable treatment are similarly

15   situated (the fourth element necessary to establish a prima facie case under Title VII), the

16   individual[] seeking relief must demonstrate, at the least, that [he or she is] similarly

17   situated to those employees in all material respects." *Moran v. Selig*, 447 F.3d 748, 755

18   (9th Cir. 2006).  Mr. Weil identifies only one respect in which he was similarly situated

19   to the unnamed white, female directors and managers that he posits are comparators—

20   that Mr. Weil, too, was a "director or manager." (Resp. at 19.)  He identifies no white,

21   female directors or managers who regularly and repeatedly failed to perform action items

22   in a PIP or otherwise performed at a concededly unsatisfactory level.  (*See id.*; 2013

ORDER- 21

1    Midyear Self-Eval. at 1-2; Weil PIP.)  Mr. Weil thus demonstrates that he held a "similar

2    job[]" to his comparators, but he makes no showing of "similar conduct."  *Vasquez*, 349

3    F.3d at 641.  In other words, he provides insufficient evidence to show that he is

4    "similarly situated" to his purported comparators "in all material respects."[8]

5           Mr. Weil makes another argument that could be construed to point to "other

6    circumstances surrounding the adverse employment action [that] give rise to an inference

7    of discrimination."  *See Peterson*, 358 F.3d at 603.  Mr. Weil argues that the treatment of

8    Clinton Arnold, an African-American male who also leveled allegations of discrimination

9    against Frontier, constitutes "compelling evidence in support of Weil's claim of disparate

10   treatment."  (Resp. at 23.)  Ms. Loffert, who became Mr. Arnold's supervisor in January

11   2013 (Venneburg Decl. ¶ 33, Ex. AE ("Arnold Dep.") at 25:9-15), terminated Mr. Arnold

12   on March 18, 2016 (*id.* at 37:18-21).  Mr. Weil points to the similar scenarios

13   surrounding Mr. Arnold's termination—especially the "key role" that Ms. Loffert played

14   "in each termination"—as evidence that members of his protected classes suffered

15   discrimination in the employ of Defendants.  (Resp. at 24.)

16          Even assuming Mr. Arnold's allegations are admissible, they do raise a dispute of

17   material fact surrounding the fourth element of Mr. Weil's prima facie case.  The only

18   _____

19      [8] At least in part because "a plaintiff's burden is much less at the prima facie stage than at
     the pretext stage," courts "generally analyze an employer's reasons for why employees are not

20   similarly situated at the pretext stage of *McDonnell Douglas*, not the prima facie stage."  *Hawn
     v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1158-59 (9th Cir. 2010).  However, Mr. Weil fails to

21   satisfy even his minimal prima facie burden.  *See Moran*, 447 F.3d at 755.  Accordingly, the
     court need not reach the issue of pretext.  The court notes, however, that for the same reasons

22   Mr. Weil's comparator evidence fails at the prima facie stage, it does not constitute "specific and
     substantial" evidence of pretext.  *Bergene*, 272 F.3d at 1142.

1    connection between Mr. Arnold and Mr. Weil is Ms. Loffert.  (*See* Resp. at 23-25.)

2    Contrary to Mr. Weil's assertions, Ms. Loffert did not play a "key role" in Mr. Weil's

3    termination, nor is her testimony on that subject "contradictory."  (*Id.* at 24-25.)  Ms.

4    Loffert testified that she was "kept in the loop" on the termination process based on her

5    position at the company (*id.* at 91:25, 93:10) and supported Ms. Brown's decision to

6    terminate Mr. Weil (*id.* at 100:4-12).  There is no evidence that Ms. Loffert knew of Ms.

7    Brown's decision prior to August 4, 2013 (*see id.* at 79:2-8), and no evidence that

8    supports a reasonable inference that Ms. Loffert had any role other than expediting the

9    termination process based on Ms. Brown's decision (*see id.* at 80:3-7).  Ms. Loffert's

10   testimony that Mr. Weil identifies and the other evidence in the record is consistent

11   regarding her minimal role in Mr. Weil's firing.[9]  (*See* Loffert Dep. at 91-93.)  Moreover,

12   Mr. Weil points to no evidence that Ms. Loffert harbored discriminatory intent toward

13   Mr. Arnold or Mr. Weil.

14        Mr. Weil asks the court to infer too much from the fact that Mr. Weil and Mr.

15   Arnold were both members of a protected class that suffered adverse employment actions

16   during the same time period.  The admissible evidence does not support an inference of

17   discrimination from this happenstance, and Mr. Weil has also failed to identify any

18

19        [9] Mr. Weil argues that Ms. Loffert has testified inconsistently regarding her involvement
     in the "decision to terminate Mr. Weil."  (Resp. at 25 & n.10 (citing Loffert Dep. at
20   92:16-93:17).)  In response, Ms. Loffert explained that she was kept in the loop and knew the
     decision to terminate Mr. Weil was happening, but that she did not partake in actually making
21   the decision to terminate him.  (Loffert Dep. at 93:9-13.)  No evidence in the record undermines
     this version of events, and thus a factfinder could not reasonably infer discrimination from the
22   trivial discrepancy in Ms. Loppert's testimony.

1  suitable comparators to generate that inference.  Accordingly, the court concludes that

2  Mr. Weil has failed to provide evidence of the fourth element of his prima facie case.

3  Because Mr. Weil fails to meet his prima facie burden, the court grants summary

4  judgment on his wrongful termination claim.

5                          **IV.    CONCLUSION**

6          Based on the foregoing analysis, the court GRANTS Defendants' motion for

7  summary judgment (Dkt. # 34) and DISMISSES this case with prejudice.

8          Dated this 30th day of September, 2016.

9

10

11                                        _____

12                                        JAMES L. ROBART
                                          United States District Judge

13

14

15

16

17

18

19

20

21

22